ALB:CNR
F. #2016R02221

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 3 2017 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JACK VITAYANON,

Defendant.

- - - - - - - - - - - X

**17 - 80M**

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN
SUPPORT OF
ARREST WARRANT
AND COMPLAINT

(21 U.S.C. § 846)

EASTERN DISTRICT OF NEW YORK, SS:

JOHN LATTUCA, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

On or about and between September 2014 and January 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JACK VITAYANON, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved 500 grams or more of a substance containing methamphetamine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Section 846)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), assigned to the Long Island Violent Gangs and Narcotics Unit, and have been involved in the investigation of numerous cases involving the illegal distribution of controlled substances, including methamphetamine. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation.

2. On or about December 2, 2016, HSI agents and local law enforcement officers investigating the distribution of methamphetamine on Long Island seized a Federal Express package at a private residence in Oceanside, New York that contained approximately 460 grams of a white crystalized substance that field tested positive for methamphetamine. Placed under arrest, the intended recipient of the package ("CS") admitted, among other things, that: (a) s/he was expecting the seized one pound shipment of methamphetamine from his/her source of supply in Arizona (the "Arizona Source" or "AS"); (b) CS paid the Arizona Source $8,600 for the methamphetamine shipment in advance; (c) CS had been purchasing similar distribution quantities of methamphetamine from the Arizona Source for many months prior to CS's arrest; and (d) in or about September 2014, CS was put in contact with the

---

[1] Because the purpose of this Affidavit and Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

Arizona Source as a source of methamphetamine by the defendant JACK VITAYANON, who also purchased distribution quantities of methamphetamine from the Arizona Source.[2] The CS also agreed to work with HSI in a proactive capacity to further the investigation into the Arizona Source and VITAYANON.

3. On or about December 15, 2016, the CS, acting at the direction of law enforcement, recorded a videochat conducted over the internet with the defendant JACK VITAYANON. During the recorded conversation, VITAYANON, who was observed in his Washington DC apartment smoking what appeared to be methamphetamine from a glass pipe, agreed to send an ounce of methamphetamine on consignment to the CS at the CS's residence in Oceanside, New York.

4. On or about December 16, 2016, in a series of text messages with the CS's phone, the defendant JACK VITAYANON indicated that he was at his residence ("Home now") packaging methamphetamine for distribution ("Im preparing stuff"). VITAYANON further stated that he was sending an ounce ("zip") of methamphetamine to the CS, provided a Federal Express tracking number for the shipment being sent to the CS's residence in Oceanside, New York and requested that the $1,650 payment[3] for the methamphetamine be deposited into his personal bank accounts. VITAYANON also provided the routing and account numbers for these accounts that are in his name. A

---

[2] Statements contained in this Affidavit are repeated in sum and substance and in part, unless otherwise indicated.
[3] VITAYANON also indicated that the "cash deposit to my chase bank account" should be "1650 including ship[ping] and my Ubers".

videochat recorded between VITAYANON and the CS that day also showed VITAYANON in his residence smoking what appeared to be methamphetamine from a glass pipe.

5. On or about December 17, 2016, HSI agents seized a Federal Express package addressed to the CS at the CS's residence in Oceanside, New York bearing the tracking number provided by the defendant JACK VITAYANON the day before, which contained approximately one ounce of a white crystalized substance that field tested positive for methamphetamine. Upon receipt of the package, the CS's phone sent VITAYANON a text message indicating receipt and VITAYANON inquired when he could expect payment because he "need[ed] to turn it around for a reup."[4]

6. On or about December 20, 2016, the defendant JACK VITAYANON sent a text message to CS requesting that the $1,650 in proceeds from the sale of the ounce of methamphetamine he shipped to CS be divided up, with $650 deposited into his Chase bank account and the remaining $1,000 deposited in a bank account controlled by the Arizona Source. CS then contacted the Arizona Source via a cell phone communication program and had the following memorialized conversation with the Arizona Source:

> CS: jack said he was reupping and for me to pay $1000 to your bank account. Is your Wells Fargo still the same? If so confirm account number
>
> AS: [*10-digit number*]
>
> AS: [*9-digit number*]
>
> AS: second number is routing number not sure if u need

---

[4] Based on my training and experience, VITAYANON wanted to use the payment from the CS ("turn it around") to purchase an additional quantity of methamphetamine ("reup") from the source of supply.

5

Later in that same conversation, CS requested that the Arizona Source provide an additional two ounces of methamphetamine on consignment. The Arizona Source responded: "Okay no problem will send you two zips today". CS then asked the Arizona Source the price per ounce for the methamphetamine, to which the Arizona Source replied: "Well I'm not going to capitalize on this how much is your normal order divided by 16 x 2".[5] Later that day, the Arizona Source confirmed that he sent the two ounces of methamphetamine to the CS and that it would arrive the next morning.

7. On December 21, 2016, HSI agents seized the package sent by the Arizona Source to the CS at a Federal Express facility in Garden City, New York. A search of the package revealed over two ounces of a white crystalized substance that field-tested positive for methamphetamine.

8. Based on information provided by the Treasury Inspector General for Tax Administration, during the charged conspiracy, the defendant JACK VITAYANON worked in Washington DC for the United States Department of the Treasury as an Attorney Advisor for the Internal Revenue Service in the Office of Professional Responsibility.

9. On or about January 11, 2017, at approximately 5:45 pm, HSI agents initiated surveillance of the defendant JACK VITAYANON as he was returning home after work to his residence in an apartment complex in Washington DC. At approximately 6:03 pm, VITAYANON was observed entering his apartment building. At approximately 7:40 pm, VITAYANON sent a text message to the CS indicating that he was at his home weighing

---

[5] Based on my training and experience, and investigation of this matter, CS's "normal order" of methamphetamine from the Arizona Source would be 16 ounces ("zips") of methamphetamine.

methamphetamine for distribution. At approximately 8:22 pm, VITAYANON sent a text message to the CS indicating that he could send the CS two ounces of methamphetamine and was preparing a shipping label. At approximately 8:25 pm, the CS's cell phone sent VITAYANON a text message asking if VITAYANON would make the 9:00 pm cutoff for Federal Express shipments. At approximately 8:33 pm, VITAYANON was observed exiting his apartment complex holding a Federal Express envelope and entering a silver Toyota Prius being driven by another individual. HSI Agents conducting surveillance followed the Prius to a FedEx Office Ship Center also in Washington DC. At approximately 8:43 pm, VITAYANON was observed entering the Federal Express store. At approximately 8:55 pm, VITAYANON sent the CS's cell phone a text message indicating that he made the Federal Express shipment deadline and also provided a tracking number for the package.

   10. On January 12, 2017, HSI agents seized a Federal Express package bearing the tracking number provided by the defendant JACK VITAYANON addressed to the CS that contained approximately two ounces of a white crystalized substance that field tested positive for methamphetamine.

   WHEREFORE, your affiant respectfully requests that an arrest warrant be issued for the defendant JACK VITAYANON so that he may be dealt with according to law.

   In addition, it is respectfully requested that this Affidavit and arrest warrant be filed under seal until further order of the Court. Premature disclosure of the contents of this

Affidavit and the arrest warrant would seriously jeopardize the investigation, by notifying the targets of the existence of the investigation and afford them the opportunity to flee from prosecution and destroy and tamper with evidence.

_____
JOHN LATTUCA
Special Agent, United States Department of
Homeland Security, Homeland Security
Investigations

Sworn to before me this
30 day of January, 2017

/s/ Anne Y. Shields
_____
THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK